```
                UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA

                               )
VIRGINIA LOO FARRIS            )
                               )
            Plaintiff,         )
                               )
     v.                        )   Civil Action No. 05-1975(RMU)
                               )
CONDOLEEZZA RICE               )
Secretary of State             )
Department of State            )
                               )
            Defendant.         )
_____)
```

**DEFENDANT'S STATEMENT OF MATERIAL FACTS**
**AS TO WHICH THERE IS NO GENUINE ISSUE**

    The defendant, in accordance with Local Rule 7.1(h), submits the following statement of material facts as to which there is no genuine issue:

    1.   Plaintiff began her career as a Foreign Service Officer with the United States Information Agency (USIA) in October 1972. (ROI, Ex. F2a; see also Def. Ex. 1)

    2.   USIA was integrated into the State Department by Act of Congress in October 1999.

    3.   The State Department's Foreign Service consists of five specialties or "cones" to which Foreign Service Officers are assigned early in their career. (ROI, Ex F2a).

    4.   Prior to the integration of USIA with the State Department there were four "cones": political, economic, consular, and administrative.  Upon integration, a fifth cone was

added to incorporate the USIA Foreign Service Officers:  public diplomacy (<u>See</u> generally, ROI, Ex. F2a, at 1).

    5.    Upon integration, Ms. Farris continued to be assigned to the public diplomacy cone (<u>Id</u>.).

    6.    Foreign Service Officers are assigned for two to three year tours of duty by a bidding process.  Most assignment decisions for personnel at the FS-01 (the rank directly below that of Senior Foreign Service) level through the ranks of the Senior Foreign Service are handled by the general assignments committee and fall under the auspices of the Senior-Level Assignments Division in the Bureau of Human Resources (ROI, Ex. F7, at 4, 6)

    7.    Decisions on Deputy Chief of Mission ("DCM") positions are made by a separate  "DCM Committee." <u>Id</u>.

    8.    Plaintiff began a three-year assignment as Public Affairs Officer ("PAO") to Bangkok that commenced in August 1998 (ROI, Ex. F2a, at 2).

    9.    ...........

    10.    ..................... ........he was not ....... to return to Bangkok for the duration of plaintiff's tour (<u>Id</u>., at 5-6).

    11.    In September 1999, for compassionate reasons and in order to enable plaintiff to reunite her family should she so choose, USIA and plaintiff entered into an agreement (in which the State Department acquiesced) whereby plaintiff could bid

early on positions for transfer in the summer of 2000 (a year short of her three-year tour of duty in Bangkok)(ROI, Ex. F2a, at 2-3; see also ROI, Ex. F2b at 10).

12. The agreement provided that if plaintiff did not receive an assignment to her satisfaction, she could complete her tour of duty in Bangkok and re-bid in the following assignment cycle (ROI, Ex. F10, at 2).

13. Accordingly, plaintiff bid on potential assignments beginning in the fall of 1999 through spring of 2000. She did not receive the assignments she desired and decided to remain in Bangkok until the summer of 2001.

14. Plaintiff bid on the Athens Public Affairs (PAO) position. She was both the Bureau's and Embassy's top candidate for the position (ROI, Ex. 17 at 598).

15. At plaintiff's request, the paneling of the position was postponed several times. (ROI, Ex. F18m; ROI, Ex F18o; and Ex. 18r at 633).

16. Finally, the Department could wait no longer to fill the position because the officer had to be placed into the Greek language training course in the summer of 2000. (ROI, Ex. 18v at 635; ROI Ex. Fza at 7).

17. Plaintiff rejected the PAO job in Athens and instead chose to participate in a "shoot out" for the USNATO Political Counselor job in Brussels before the assignment's committee with EUR Bureau's candidate for the position. (Id.).

18.  In early April, 2000, plaintiff learned that the European (EUR) Bureau had a candidate ranked one level below the plaintiff in the Foreign Service personnel system that it was strongly backing for the position and for whom it would request a "cede" (ROI, Ex. F2a, at 6).

19.  "Cedes" are expressly provided for in Department standard operating procedures (Exhibit 2).  A "cede" in this context refers to the permission granted by the central Bureau of Human Resources to permit an assignment of an officer who is not in the Senior Foreign Service into a Senior Foreign Service position (Exhibit 2, at Bates 440).

20.  Plaintiff's Career Development Officer advised her that the reason the panel did not select her for the position was that she had neither regional nor functional experience for the job (ROI, Ex. 18s).

21.  Plaintiff had no NATO experience (Farris Dep., March 3, at 13 (Exhibit 3)).  Plaintiff's resume shows no experience in the European region (Def. Exhibit 1).

22.  On May 30, 2000, Ambassador Vershbow sent a memorandum to the European Bureau setting forth his views for the purposes of the "shoot-out" as to why Mr. Goodman was a superior candidate to the plaintiff (Exhibit 4).  Mr. Goodman was at the time occupying the number two "political" position at USNATO, i.e., he was the deputy to the incumbent Political Counselor (ROI, Ex. F7, at 8).  He had considerable background in East-West and European

issues; a deep background on Russia and Germany; and he ran the day to day operations in the Political Section of the Embassy. Finally, he was an excellent negotiator which is a critical part of the job. Id.

23.   Ambassador Vershbow met personally with Ms. Farris and reviewed her record carefully.  While he thought she was an excellent officer and has had some exposure to Politico-Military issues, she had virtually no EUR or NATO experience, little familiarity with the national security bureaucracy in Washington and no track record as a negotiator (the aspect of the job that is, perhaps, the most critical and difficult to pick up). Ambassador Vershbow did not think the Mission could afford a lengthy period of on-the-job training for Ms. Farris, especially at a time when the Deputy Chief of Mission (DCM) position is turning over. Id.

24.   Plaintiff's lack of comparable regional and political experience was confirmed by the Deputy Director of the Office of Career Development and Assignment in the Bureau of Human Resources at the time of the shoot-out (ROI, Ex. F7, at 9), by the Director of Senior Assignment in the Career Development Office at the time of the shoot-out (ROI, Ex. F10, at 3; see also Ex. F10, at 5), and by the European Bureau (ROI, Ex. F6b (Bates 248)).

25.   Plaintiff attempted to bid for the position of

Political Advisor to the NATO military commander located in Brunsum, Netherlands.  This is a NATO position.  (ROI, Ex. F8a at 2).

26.   The Department's "short list" of potential candidates for NATO consideration was made prior to receipt of plaintiff's bid.  Id.

27.   The person selected for the position was a Department of State Senior FSO (male, caucasian) with the same rank as plaintiff (ROI, Ex. F8a).  He had significant experience with the development and implementation of U.S. foreign policy towards Russia and National Security Counsel experience.  (ROI, Ex. F8 at 5).

28.   Plaintiff had no similar regional experience or political experience in developing foreign policy towards Russia or Europe.  (Def. Ex. 1).

29.   Internal Department regulations permit foreign service officers to bid on and be assigned to certain positions designated "multifunctional secondary skill code".  (2 FAH 2620 et seq.)

30.   Plaintiff did not apply for, nor was she granted, a multifunctional secondary skill code.  (Farris Dep. March 3, p. 20).

31. Plaintiff's family returned to Bangkok in mid-2000 during which time plaintiff received a separate maintenance allowance.  (ROI, Ex. F3a).

32.  The U.S. Attorney's Office filed suit against plaintiff under the False Claim Act, 31 U.S.C. § 3729 et seq., to recover damages and civil penalties.  Ms. Farris settled that claim in August 2005 agreeing to pay $10,800 to the government.  (Def. Ex. 8).

Respectfully submitted,

/s/
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney


/s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


/s/
DIANE M. SULLIVAN, D.C. Bar #12765
Assistant United States Attorney
555 4TH St., N.W.,
Room E4919
Washington, D.C.  20530
(202) 514-7205



OF COUNSEL

DAVID HUITEMAN
Department of State