## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| VIRGINIA FARRIS, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 05-1975 (RMU) |
| | : | | |
| v. | : | Document No.: | 14 |
| | : | | |
| CONDOLEEZZA RICE, | : | | |
| Secretary of State, | : | | |
| Department of State, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### Denying the Plaintiff's Motion for A Preliminary Injunction

### I.    INTRODUCTION

Currently before the court is the plaintiff's motion for a preliminary injunction.  The plaintiff, Virginia Farris, is a thirty-three year employee of the United States Foreign Service (the "defendant"), a branch of the United States Department of State.  Farris, an Asian-American woman, brings this case alleging unlawful discrimination and retaliation.  Specifically, she claims that the U.S. Foreign Service improperly failed to select her for certain positions within the agency and, when she complained, retaliated against her by investigating her and denying her training and various assignments.

Through operation of a statutory provision triggered by Farris's failure to attain a promotion within seven years, she must retire on September 29, 2006.  The plaintiff asks the court to enjoin the defendant from terminating the plaintiff's employment pending a resolution on the merits of the plaintiff's discrimination and retaliation claims.  Because the plaintiff fails to demonstrate irreparable injury, the court denies her motion for a preliminary injunction.

## II.    BACKGROUND

### A.    Factual Background

Farris is currently employed as a Public Affairs Counselor at the American Embassy in Bangkok, Thailand.  Compl. ¶ 5; Pl.'s Mot. for a Prelim. Injunction ("Pl.'s Mot.") Ex. 4.  In 1998, the United States Ambassador to Thailand revoked Farris's spouse's diplomatic status, forcing him to leave Thailand.  Compl. ¶ 6; Def.'s Opp'n at 3.  According to the defendant, the U.S. Ambassador took this action after learning that Farris's husband was abusing her.  Def.'s Opp'n at 3.

In an effort to reunite with her husband, Farris sought alternative employment within the Foreign Service.  Compl. ¶ 10.  Among these, the plaintiff applied for various positions, including Deputy Principle Officer, Consular Affairs Officer, Officer Director, and Public Affairs Counselor.  *Id.*  The defendant did not hire the plaintiff for any of these positions.  *Id.* ¶ 11; Def.'s Opp'n at 3-4.

To the plaintiff, the Foreign Service discriminated against her based on her gender and race.  *Id.* ¶ 14.  The plaintiff expressed these concerns to the Deputy Chief of Mission and the Department's Chief Equal Employment Opportunity Officer in 1999.  *Id.* ¶ 17.  In 2000, she filed a formal EEO complaint.  *Id.*  The plaintiff alleges that because she filed the EEO complaint, the defendant investigated certain of her activities.  *Id*. ¶ 18.  Also, she claims that the defendant denied her further assignments and postings.  *Id.*

### B.    Procedural Background

An Administrative Law Judge rejected the merits of the plaintiff's EEO complaint.  Compl. ¶ 21.  The plaintiff, therefore, filed the instant case on October 5, 2005.  *Id.*  The plaintiff filed a motion for a preliminary injunction on September 5, 2006 seeking an injunction to prevent

the defendant from discharging her from her job.  Pl.'s Mot. at 14.  The court turns now to the merits of that motion.

### III.    ANALYSIS

#### A.    Legal Standard for Injunctive Relief

This court may issue interim injunctive relief only when the movant demonstrates:

(1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction.

*Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)); *see also World Duty Free Americas, Inc. v. Summers*, 94 F. Supp. 2d 61, 64 (D.D.C. 2000).  It is particularly important for the movant to demonstrate a substantial likelihood of success on the merits.  *Cf. Benten v. Kessler*, 505 U.S. 1084, 1085 (1992) (per curiam).  Indeed, absent a "substantial indication" of likely success on the merits, "there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review."  *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999) (internal quotation omitted).

The four factors should be balanced on a sliding scale, and a party can compensate for a lesser showing on one factor by making a very strong showing on another factor.  *CSX Transp., Inc. v. Williams*, 406 F.3d 667 (D.C. Cir. 2005) (citing *CityFed Fin. Corp.*, 58 F.3d at 747).  "An injunction may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury."  *CityFed Fin.*

*Corp.*, 58 F.3d at 747.

Moreover, the other salient factor in the injunctive relief analysis is irreparable injury. A movant must "demonstrate at least 'some injury'" to warrant the granting of an injunction. *CityFed Fin. Corp.*, 58 F.3d at 747 (quotation omitted). Indeed, if a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors. *Id.*

Because interim injunctive relief is an extraordinary form of judicial relief, courts should grant such relief sparingly. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). As the Supreme Court has said, "[i]t frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Id.* (citation omitted). Therefore, although the trial court has the discretion to issue or deny a preliminary injunction, it is not a form of relief granted lightly. In addition, any injunction that the court issues must be carefully circumscribed and tailored to remedy the harm shown. *Nat'l Treasury Employees Union v. Yeutter*, 918 F.2d 968, 977 (D.C. Cir. 1990) (citation omitted).

If a party moving for injunctive relief fails to show irreparable injury, the court need not consider the remaining factors for issuance of a preliminary injunction. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995) (stating that because the movant "has made no showing of irreparable injury here, that alone is sufficient for us to conclude that the district court did not abuse its discretion by rejecting [the movant's] request. We thus need not reach the district court's consideration of the remaining factors relevant to the issuance of a preliminary injunction"). And in employment cases particularly, the court "is bound to give serious weight to the obviously disruptive effect which the grant of the temporary relief [is] likely

4

to have on the administrative process," and not "routinely apply[] . . . the traditional standards governing more orthodox 'stays.'"  *Sampson v. Murray*, 415 U.S. 61, 83-84 (1974).

When a party seeks a mandatory injunction – to change the status quo through action rather than merely to preserve the status quo – typically the moving party must meet a higher standard than in the ordinary case: the movant must show "clearly" that she is entitled to relief or that extreme or very serious damage will result.[1]  *Adair v. England*, 217 F. Supp. 2d 1, 3 n.6 (D.D.C. 2002); *Veitch v. Danzig*, 135 F. Supp. 2d 32, 35 (D.D.C. 2001); *see also Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319 (9th Cir. 1994) (noting that "[i]n cases such as the one before us in which a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction"); *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025-26 (2d Cir. 1985) (same); *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976) (same).  The D.C. Circuit, however, has not yet adopted or, for that matter, rejected this rule.  *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 834 n. 31 (D.C. Cir. 1984) (stating that "[i]n this circuit, however, no case seems to squarely require a heightened showing, and we express no view as to whether a heightened showing should in fact be required"); *see also Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 159 F.3d 636, at *1 (D.C. Cir. 1998) (unpublished table decision) (declining to "reach the question whether the district court erred in holding that the standard

---

[1]    The plaintiff characterizes her motion as one seeking to preserve the status quo.  Pl.'s Mot. at 13.  The plaintiff's separation from her current employment will occur automatically and without any defendant action, through operation of 22 U.S.C. §§ 4007 and 4052.  Though the plaintiff may be correct that an injunction would preserve the status quo of her employment, from a legal perspective, the plaintiff actually seeks a mandatory injunction.  She in fact seeks an order from this court directing the defendant to act affirmatively, either (1) to change the plaintiff's career records and/or promotion status so that she will not be mandatorily retired under the statute or (2) to ignore the statutory mandate.

applicable to a mandatory preliminary injunction is higher than that applicable to a prohibitory preliminary injunction").

The court proceeds by determining whether the plaintiff demonstrated irreparable injury. Because she has not, the court denies the motion for injunctive relief without consideration of the other factors relevant to preliminary injunctions. And for this reason, the court need not determine whether to require a greater showing for mandatory injunctive relief.

### B.    The Plaintiff Fails to Show Irreparable Injury

The plaintiff makes two primary arguments to support her claims that her mandatory retirement constitutes irreparable injury. First, the plaintiff asserts that "every day of forced retirement will cut time off the time from [her] employment . . . if she is reinstated." Pl.'s Mot. at 11. Second, she claims that her life is so intertwined with her work, that she might not be able to find work "approaching her current position, or she might not be able to find work at all." *Id.* at 11-12. The court addresses each of these arguments in turn.

The plaintiff is correct in recognizing that if she prevails on the merits, the court cannot order the defendant to let her work on dates past. In this limited sense, therefore, her loss of working days is irreparable. This loss, however, is not legally irreparable. To the contrary, given the court's equitable powers to remedy for loss in employment through, for example, back pay and time in service credit, cases are legion holding that loss of employment does not constitute irreparable injury. *Sampson v. Murray*, 415 U.S. at 88-92 (quoting *Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958) for the proposition that "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs

6

heavily against a claim of irreparable harm"); *see also, Int'l Ass'n of Machinists & Aerospace Workers v. Nat'l Mediation Bd.*, 374 F. Supp. 2d 135, 142 (D.D.C. 2005) (citing *Davenport v. Int'l Bhd. of Teamsters, AFL-CIO*, 166 F.3d 356, 367 (D.C. Cir. 1999), in ruling that "a loss of income does not constitute irreparable injury because the financial loss can be remedied with money damages").

The plaintiff's second claim of irreparability stems from her tenure with the Foreign Service. The plaintiff fears an inability to regain employment even if she is successful in this case, and she is concerned that she will be unable to find a comparable position elsewhere. Pl.'s Mot. at 12. The law, however, is clear that "difficulties in immediately obtaining other employment – external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself – will not support a finding of irreparable injury, however severely they may affect a particular individual." *Sampson*, 415 U.S. at 92, n.68; *Nichols v. Agency for Int'l Dev.*, 18 F. Supp. 2d 1, 4 (D.D.C. 1998).

That said, "cases may arise in which the circumstances surrounding an employee's discharge, together with the resultant effect on the employee, may so far depart from the normal situation that irreparable injury might be found. Such extraordinary cases are hard to define in advance of their occurrence." *Id.*, 18 F. Supp. 2d at 92 n.68. The plaintiff believes that her case fits this bill, and to support her assertion, she cites *Bonds v. Heyman*, 950 F. Supp. 2d 1202 (D.D.C. 1997) (abrogated on other grounds). Pl.'s Mot. at 11-12. In *Bonds*, the district court granted the plaintiff's motion for a temporary restraining order after concluding that the plaintiff's discharge would be irreparable. *Bonds*, 950 F. Supp. 2d. at 1210. The court arrived at this conclusion after observing that the plaintiff (1) was 58 years old, (2) was an employee of the Smithsonian for 40 years, (3) was not college educated, (4) "worked her way up from a typist to a

program analyst-attaining a high level position with substantial responsibility," and (5) was unlikely to find work with a commensurate level of responsibility, if she could find work at all. *Id.* at 1215. Also, the court concluded that the plaintiff's adamance in remaining in her job though she was entitled to almost full retirement benefits and would retain health and life benefits demonstrated "just how much of her life is tied into her career." *Id.*

The court's holding in *Bonds*, however, marks an exception, not a rule. As stated by the D.C. Circuit, "[t]he key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Virginia Petroleum Jobbers*, 259 F.2d at 925.

And even were this court to agree with the court in *Bonds* that the circumstances presented in that case constituted irreparable injury, the facts in this case are distinguishable. True, Farris is almost exactly the age of the plaintiff in *Bonds* and has as significant a career history with her employer. The plaintiff here, however, graduated Phi Beta Kappa and magna cum laude from Michigan State University with a degree in social sciences and then obtained a masters degree in Chinese Studies from the University of Michigan. Pl.'s Mot., Ex. 23. Also, the plaintiff earned an additional masters degree from the National Defense University in National Security Strategy. *Id.* Because of her education background, and her extensive career in advanced positions in the Foreign Service, the plaintiff here stands a far better chance of obtaining significant alternative work than did the plaintiff in *Bonds*, who lacked collegiate education of any sort. *See Nichols*, 18 F. Supp. 2d at 5 (stating that "[m]erely asserting that one will lose his or her job and its attendant salary, without more, cannot possibly provide a sufficient basis for injunctive relief").

The court in *Bonds* took pains to note that the plaintiff's tenacity in seeking to maintain

her employment demonstrated how much her life is tied to her career. *Bonds*, 950 F. Supp. 2d at 1215. The court concluded that this factor raised the specter of irreparability for the plaintiff. This court, too, is mindful of the hardship placed upon the plaintiff, a public servant with an entire career dedicated to a single federal agency. And like the plaintiff in *Bonds*, Farris' history with the Foreign Service is undisputed as both long and respectable. But these arguments are more appropriately reserved for consideration within the balancing of the harms prong of the injunction standard.

Although the irreparability and balancing of the harms prongs both consider the potential harm to the plaintiff, the balance of the harms analysis considers the harm's severity while the irreparability inquiry focuses on the adequacy of any available remedy.[2] The court need not attend too long in balancing harms when the plaintiff has failed to demonstrate irreparable injury. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995). Suffice it to say that the court considers compelling and insurmountable the institutional harm attendant to judicial interference with federal personnel actions. *Simpson*, 415 U.S. at 83-84; *Nichols*, 18 F. Supp. 2d at 6 (stating that injunctions for a plaintiff who "believed that his termination or

---

[2]     Perhaps the best way for this court to illustrate that the plaintiff's tenure as a federal employee is best considered by the court in balancing harms rather than irreparability is by considering arguments raised in the paradigmatic emergency injunction case in which a bulldozer stands poised to destroy real property. In such a case, the plaintiff's best argument for irreparability would likely be that real property is unique and cannot readily be rebuilt – that there is no adequate remedy at law. *See Bean v. Independent Am. Sav. Ass'n*, 838 F.2d 739, 743 (5th Cir. 1988) (ruling that injunctive relief was appropriate where the movant stood to lose interests in real property which are presumed to be unique). In such a case, the court's assessment of irreparability would not hinge on the length of time the plaintiff has lived in the house. The length of time he has lived in the house may, however, bear on the subjective importance of that house to the plaintiff. Here too, the plaintiff's subjective attachment to her employment may demonstrate the personal harm her involuntary retirement will have, but it does not, of its own, bolster a claim of irreparability.

involuntary separation was animated by discriminatory or retaliatory animus" would "paralyze[] [the federal government] from taking necessary personnel action"). Injunctive relief is appropriate in the federal employment realm only when circumstances "so far depart from the normal case." *Sampson*, 415 U.S. at 92. The facts here do not present such a case.

## IV.    CONCLUSION

For the foregoing reasons, the court denies the plaintiff's motion for a preliminary injunction. An order instructing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 25th day of September 2006.

RICARDO M. URBINA
United States District Judge